IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM P. BENNETT,

        Plaintiff,                    No. 2:11-cv-1679 EFB

       vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.             ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I. BACKGROUND

      Plaintiff protectively applied for a period of disability, DIB and SSI on August 30, 2007, alleging that he had been disabled since September 15, 2005. Administrative Record ("AR") 73-76, 184. Plaintiff's applications were initially denied on February 19, 2008, and upon reconsideration on August 20, 2008. *Id*. at 77, 83. On October 22, 2009, a hearing was held

before administrative law judge ("ALJ") Michael McShane. *Id.* at 35. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.* at 35-72.

On November 13, 2009, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 21-28. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since September 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971).
>
> ...

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2

3. The claimant has the following severe impairments: lumbar spine bulges L2-3, L3-4, and L4-5 and narrowing at L5-S1 with complaints of pain (20 CFR 404.1520(c) and 416.920(c)).

...

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

...

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; the ability to stand and/or walk for a total of at least 2 hours in an 8-hour work day; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; and no work at unprotected heights or around dangerous moving machinery.

...

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

...

7. The claimant was born [in] 1969 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

...

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2008 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 23-28.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 82. However, on April 28, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by: 1) improperly evaluating the medical record, including the opinions of plaintiff's treating physicians, 2) making improper medical conclusions, 3) rejecting plaintiff's testimony without sufficient justification, and 4) failing to credit a hypothetical posed by the VE that accurately illustrated plaintiff's limitations.

////

A. <u>The ALJ Did Not Err in Evaluating the Medical Evidence</u>

Plaintiff first argues that the ALJ erred by rejecting the medical opinions of plaintiff's treating physicians without providing legally sufficient reasons. Pl.'s Mot. for Summ. J., Dckt. No. 16 at 18-21. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

////

////

////

////

////

1    Plaintiff's treating physicians included Wilfred W. Eastman, Jr., Dr. O'Sullivan, and Dr.
2  Dhruva.  On October 1, 2007, Dr. Eastman conducted a follow up examination to evaluate
3  injuries to plaintiff's back that were sustained in an on-the-job injury in November 2003.[2]  AR
4  at 305-06.  Dr. Eastman found that plaintiff had positive straight leg raising, diminished
5  sensation in the anterior right thigh, and only moderate tenderness in the midline of the lower
6  back.  *Id*.  He further noted that plaintiff was feeling improved over where he was on August 30,
7  2007.  *Id*.  He diagnosed plaintiff with degenerative joint disease and degenerative disk disease,
8  and stated that plaintiff was "temporarily disabled at this time." *Id*. at 306.

9    On October 15, 2007, Dr. Eastman completed a Claim for Disability Insurance Benefits -
10 Doctor's Certificate form.  *Id*. at 309.  On the form, Dr. Eastman stated that plaintiff's diagnosis
11 was spine strain, lower back pain, and bulging disk.  Dr. Eastman also stated that plaintiff was
12 under a disability beginning November 1, 2007, and that he anticipated releasing plaintiff to
13 return to work on January 1, 2008.  *Id*.

14   Dr. Eastman referred plaintiff to Dr. O'Sullivan, who evaluated plaintiff on August 27,
15 2008.  *Id*. at 395.  Dr. O'Sullivan's report reveals that plaintiff described that his back worsens
16 when he bends at the waist, kneels and then stands, and sits for long periods of time.  *Id*.  Upon
17 examining plaintiff's spine, Dr. O'Sullivan found that plaintiff demonstrated loss of lumbar
18 lordosis, mild local tenderness, and restricted range of motion.  *Id*. at 396-97.  An MRI
19 confirmed an annular tear with herniation at L4-L5 and evidence of degenerative disk disease at
20 L2-L3 and L3-L4.  *Id*. at 397.

21   Dr. O'Sullivan referred plaintiff to Dr. Dhruva for evaluation and management of
22 plaintiff's chronic pain.  *Id*. at 430.  On May 28, 2009, Dr. Dhruva found that plaintiff's cervical
23 spine motions were reasonably within normal limits.  *Id*. at 432.  He concluded that plaintiff was
24 suffering from classic discogenic pain, likely derived from the L4-L5 disk, and intermittent

---

[2] Dr. Eastman's notes indicate that plaintiff sustained his injury in 2004, but other evidence in the record shows that plaintiff's injury occurred in 2003.  AR 366, 370.

6

radiculitis in the distribution of L3 on plaintiff's left side. *Id*. at 433. In a section of the report titled "Current Problems," Dr. Dhruva noted that "[p]ain interrupts [plaintiff's] sleep up to 3 times per night. Typically, he can sit for 15 to 30 minutes, he can stand for 15 minutes or less and he can walk for 15 to 30 minutes." *Id*. at 430.

Plaintiff was also evaluated by Dr. Philip Wirganowicz, an examining state agency physician, on January 26, 2008. Dr. Wirganowicz found that plaintiff's gait was normal, there was tenderness to midline palpation about the lumbosacral area, and plaintiff maintained a full range of motion of the lumbosacral spine. *Id*. at 315. He further found that plaintiff's motor strength, sensation, and reflexes were all within normal limits. *Id*. at 316-17. Dr. Wirganowicz diagnosed plaintiff with chronic low back pain and opined that plaintiff could lift 25 pounds frequently and 50 occasionally, and he could sit, stand, or walk for 6 hours in a workday with appropriate breaks. *Id*. He further opined that plaintiff does not requires an assistive device for ambulation and that plaintiff could use his upper extremities for gross motor and fine manipulative movements. *Id*. at 317.

The record also contains the opinion of Dr. Satish Sharma, a state agency examining physician who evaluated plaintiff on July 18, 2008. Plaintiff primarily complained of low back pain and left wrist pain radiating to his forearm. *Id*. at 379. Dr. Sharma's examination of plaintiff's back showed tenderness to palpation of lumbar spine and paravertebral region, pain on forward flexion at 70 degrees, extension 20 degrees, right and left lateral bending of 30 degrees, and right and left rotation of 20 degrees. *Id*. at 381. No muscle spasms were noted and straight leg raising test was negative. *Id*. Plaintiff's gait was normal and he was able to heel-toe walk and perform tandem gait. *Id*. at 383. Dr. Sharma diagnosed plaintiff with low back pain, secondary to musculoskeletal strain; left wrist strain; and problem with memory and concentration. *Id*. Dr. Sharma opined that plaintiff could lift up to 25 pounds; stand and walk for 6 hours with normal breaks; sit for 6 hours per day; and bend and stoop occasionally. *Id*. at 384. He further opined that plaintiff was limited to pushing and pulling occasionally with his

left wrist due to wrist pain. *Id.*

Plaintiff contends that the ALJ erred in evaluating Dr. Eastman's opinion that plaintiff was disabled from November 1, 2007, to January 1, 2008. In assessing this opinion evidence, the ALJ stated, "the undersigned has given Dr. Wilfred Eastman's, M.D., opinion of disability some weight. Dr. Eastman opined that the claimant would have been disabled from November 1, 2007, to January 1, 2008. The undersigned finds that this time period of disability does not meet the 12 month durational requirement as required by 20 CFR, Part 404, Subpart P, Appendix 1." *Id.* at 26. Plaintiff argues that "[t]he fact that the ALJ gives this opinion some weight indicates that the ALJ concurs that plaintiff was indeed medically disabled for at least this time period. However, the ALJ fails to make medically findings supporting his assumption that plaintiff's medical condition had changed on November 1, 2007, and on January 1, 2008." Dckt. No. 16 at 22.

The ALJ did not err in concluding that Dr. Eastman's opinion did not warrant a finding that plaintiff was disabled. First, the ALJ properly noted that the opinion only pertained to a period of few months. The regulations state that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 404.1527(a). Although it is not clear from the evidence what impairment Dr. Eastman believed to be disabling, it is clear that Dr. Eastman found that the disabling impairment would not last for more than 12 months.

Second, to the extent Dr. Eastman opined that plaintiff was disabled before and after the time specified (as plaintiff appears to believe), the ALJ was not required to provide a reason for rejecting such an opinion. "'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(e) ("A statement by a medical source that you are

8

'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, an ALJ is not obligated to provided detailed reasons for rejecting a medical experts opinion regarding the ultimate question of disability. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Here, Dr. Eastman's opinion regarded the ultimate issue of disability. Accordingly, the ALJ was not required to give detailed reasons for rejecting this opinion.

Plaintiff also argues that the ALJ erred in failing to credit the opinion of Dr. Dhruva. Plaintiff contends that "Dr. Dhruva's opinion should be regarded as endorsing Plaintiff's reported limitations that he can sit for 15 to 30 minutes; he can stand for 15 minutes or less; [and] he can walk for 15 to 30 minutes." Dckt. No. 16 at 19. According to plaintiff, the ALJ should have accepted these limitations because Dr. Dhruva did not question the limitations reported by plaintiff. Thus, plaintiff argues, "Dr. Dhruva reported Plaintiff's functional limitations as a matter of fact, without comment (much less disagreement)." *Id*. The argument is imaginative. However, it lacks merit. There is nothing in Dr. Dhruva's report indicating that he adopted the physical limitations reported by plaintiff.[3] Dr. Dhruva simply completed a history of plaintiff's illness, which also included plaintiff's subjective complaints. Dr. Dhruva did not opine on the credibility of those complaints or otherwise specify that he adopted the limitations plaintiff reported for himself. His failure to specifically address plaintiff's reported limitations does not warrant a finding that he accepted them as his own. Contrary to plaintiff's contention, a fair reading of the report reflects that Dr. Dhruva did not provide any opinion regarding plaintiff's physical limitations. *See id.* at 430-33. With no opinion to reject, the court finds no

////

////

---

[3] Plaintiff also argues in his reply for the first time that the ALJ failed to properly develop the record. Dckt. No. 20 at 5-6. This argument is based on the assumption that Dr. Dhruva adopted plaintiff's reported limitations and plaintiff's belief that it is not clear whether such an opinion is inconsistent with the ALJ's RFC determination. *Id*. The court need not address this argument, as the record does not support the argument that Dr. Dhruva adopted the limitations reported by plaintiff.

9

merit to plaintiff's argument.[4]

Plaintiff also contends, in an argument heading, that the ALJ failed to properly credit the opinion of Dr. O'Sullivan. Defendant argues that plaintiff waived this argument because he failed to address it with any specificity in the body of his motion for summary judgment. Dckt. No. 19 at 6; *see Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an ALJ's finding because the plaintiff "failed to argue [the] issue with any specificity in his briefing."). Plaintiff contends that the argument is not waived because he listed a number of cases directly after the relevant argument heading and that these cases were incorporated by reference in his argument section. Dckt. No. 20 at 6.

In his motion for summary judgment, plaintiff's counsel drafted a section titled "Assignment of Error," which included the following argument heading:

> 1. The ALJ improperly rejected (or failed to properly consider) the opinions and ultimate conclusions of Plaintiff's treating and examining physicians (Drs. Eastman, O'Sullivan and Dhruva) concerning the nature and severity of Plaintiff's impairments, without stating clear and convincing reasons nor specific and legitimate reasons supported by substantial evidence in the record for doing so.

Dckt. No. 16 at 5. Following this language, plaintiff's counsel lists multiple cases and regulations, without any explanation of how the cited authority supports the argument. *Id*. Then, in the first sentence of the argument section of plaintiff's motion, counsel wrote, "All the cases and rulings set forth above under D. (Assignment of Error) are hereby incorporated by reference into these arguments." *Id*. at 18.

---

[4] In similar fashion, plaintiff argues that the ALJ erred in accepting Dr. Wirganowicz's opinion because it is inconsistent with his own findings. Specifically, plaintiff argues that Dr. Wirganowicz's opinion that plaintiff could lift 25 pounds frequently and 50 pounds occasionally and could sit, stand, or walk for 6 hours in a workday was inconsistent with his finding that plaintiff's symptoms are "exacerbated with all activities including sitting, standing, walking, bending and lifting." Dckt. No. 16 at 18. Plaintiff, once again, is mischaracterizing the evidence. It is clear from Dr. Wirganowicz's report that he did not find that plaintiff's symptoms were easily exacerbated by other activities. Rather, the language plaintiff relies upon consists of his own subjective complaints that were relayed to Dr. Wirganowicz and recorded in a section of Dr. Wirganowicz's report titled "History of Present Illness." AR at 313. As this language was not part of Dr. Wirganowicz's findings or opinion, this argument fails.

10

1    Plaintiff's counsel makes the curious assertion that "Clearly, these references amounted
2 to arguments that medical findings and opinions of Dr. O'Sullivan, when considered in light of
3 the cited legal authority, were entitled to greater weight than the ALJ gave and the ALJ failed to
4 state clear and convincing or specific and legitimate reasons . . . for rejecting these findings
5 . . . ." Counsel is essentially asking the court to dig through the cited authority to determine
6 whether they somehow support an argument in his client's favor. That, however, is counsel's
7 job as plaintiff's attorney. Counsel is admonished that if he intends for the court to address his
8 arguments in the future, he must assert them with specificity in his briefs, rather than relying on
9 a list of cases and an argument heading. *See Carmickle*, 533 F.3d at 1161 n.2.

10   Apart from counsel's failure to brief the issue, the argument that the ALJ failed to
11 properly credit the opinion of Dr. O'Sullivan is not supported by the record. In his reply,
12 plaintiff argues that the ALJ erred in not crediting Dr. O'Sullivan's opinion that plaintiff clearly
13 has significant disabling pain. Dckt. No. 20 at 8-9; *see* AR at 397. This opinion, however, goes
14 to the ultimate disability determination; whether plaintiff's impairments renders him disabled.
15 As explained above, the ALJ is not required to provide a detailed explanation for rejecting an
16 opinion that goes to the ultimate issue of disability. Accordingly, the ALJ did not err in failing
17 to explain why Dr. O'Sullivan's conclusory opinion was not adopted.[5]

18   While plaintiff's treating physicians discussed their objective findings, they did not
19 provide a medical opinion addressing plaintiff's functional limitations. *See* 20 C.F.R.
20 § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other
21 acceptable medical sources that reflect judgments about the nature and severity of your
22 impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

---

[5] To the extent that Dr. O'Sullivan's opinion could be construed as only opining that plaintiff suffers from significant pain, the court finds that the ALJ did not reject such an opinion. In his decision, the ALJ specifically found that plaintiff experienced pain due to his back injury, but that "[i]t did not appear that plaintiff's pain is of such frequency, intensity, or duration as to be disabling." AR at 26.

11

impairment(s), and your physical or mental restrictions."). In determining plaintiff's RFC, the ALJ relied on the medical opinions from plaintiff's treating physicians, which were the only opinions addressing plaintiff's functional limitations. Because Drs. Wirganowicz and Sharma's opinions are consistent with the ALJ's RFC determination and were based on their own independent examinations of plaintiff, the court finds that the ALJ's RFC determinations is supported by substantial evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion can serve as substantial evidence supporting an ALJ's findings regarding a plaintiff's impairments and limitations); *Orn*, 495 F.3d at 632 (holding that an examining physician's independent clinical findings constitutes substantial evidence).

Notwithstanding the examining physican's evidence in the record, plaintiff asserts throughout his briefs that the ALJ should not have relied on these opinions because there is other evidence in the record that supports a finding that plaintiff is disabled. For example, plaintiff argues that an opinion from a physician's assistant "corroborates and lends further weight to the opinions and ultimate conclusions of Drs. Eastman, O'Sullivan and Dhruva, supporting and consistent with Plaintiff's claim that pain and his severe medical impairments impose functional limitations which preclude persisting in substantial gainful activity."[6] Dckt. No. 20 at 21. Even if this evidence alone weighs in favor of plaintiff, that does not render the ALJ's findings invalid.

---

[6] Physician Assistant Greg Goodwin wrote on a Note to Physician form, "Please excuse [plaintiff] from jury duty. [C]an not sit/stand greater than 10 minutes." AR at 437. The form, which was completed on September 2, 2010, almost a year after the ALJ's decision, included only the quoted language, the physician's assistant's name, his signature and the date. *Id*. The rest of the form, which included boxes that could be checked to indicate the patient's physical limitations, was left blank. Because this evidence was considered by the Appeals Counsel, this court must consider this evidence in reviewing the Commissioner's final decision for substantial evidence. *Id*. at 1-4; *see Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Given that this conclusory opinion was from a physician's assistant and not a medical doctor, and that it was made without any reference to objective medical findings, the court concludes that when considering the entire record as a whole, this new evidence does not support a finding that the ALJ's decision was not supported by substantial evidence. This is especially true given that the ALJ's relied on the opinions from two examining physicians in determining plaintiff's RFC.

12

The determination of a claimant's RFC is wholly within the province of the ALJ. *See* SSR 96-8p. It is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.* Notwithstanding plaintiff's reliance on the opinion from a physician's assistant, the ultimate RFC determination in question here was supported by Drs. Wirganowicz and Sharma's opinions, which constituted substantial evidence to support the ALJ's finding Accordingly, the ALJ did not err in evaluating the medical opinion evidence.

### B.     The ALJ Did Not Make His Own Improper Medical Conclusions

Plaintiff argues that the ALJ erred in drawing improper medical conclusions and speculative inferences from the record. Plaintiff specifically contends that the ALJ's conclusion that "[t]he impact of symptoms does not wholly compromise [plaintiff's] ability to function independently, appropriately, and effectively on a sustained basis" constituted an improper inference that is not supported by the record. Dckt. No. 16 at 22. Accordingly to plaintiff, "the ALJ without medical opinion authority assumed the results of a January 2008 orthopedic evaluation . . . and the result of a July 2008 neurological consultation precluded the possibility that the symptoms arising from verified impairments established elsewhere in the record . . . imposed functional limitations which kept Plaintiff from persisting in substantial gainful activity." Dckt. No. 16 at 22.

Plaintiff's argument is directly contradicted by the evidence the ALJ relied upon in making his conclusion that plaintiff could function independently and effectively on a sustained basis. The July 2008 neurological consultation was completed by Dr. Wirganowicz and contained his opinion regarding plaintiff's physical limitations. AR at 313-317. It was Dr. Wirganowicz opinion that plaintiff maintained the ability to lift 25 pounds frequently and 50 pounds occasionally, and plaintiff could sit, stand, or walk for 6 hours in a normal workday with appropriate breaks. *Id*. at 317. Dr. Sharma, who completed the July 2008 neurological examination, opined that plaintiff could lift up to 25 pounds, stand and walk for 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and occasionally bend and stoop. Both of these

1  opinions support the ALJ's RFC assessment and his conclusion that plaintiff's symptoms do not
2  preclude plaintiff from functioning independently and effectively on a sustained basis.

3       C.      The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's
4                Testimony

5  Plaintiff argues that the ALJ erred in his finding that plaintiff's statements regarding his
6  symptoms and resulting limitations were not credible. Dckt. No. 16 at 22. In evaluating whether
7  subjective complaints are credible, the ALJ should first consider objective medical evidence and
8  then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If
9  there is objective medical evidence of an impairment, the ALJ then may consider the nature of
10 the symptoms alleged, including aggravating factors, medication, treatment and functional
11 restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for
12 truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or
13 inadequately explained failure to seek treatment or to follow a prescribed course of treatment,
14 and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).
15 Work records, physician and third party testimony about nature, severity and effect of symptoms,
16 and inconsistencies between testimony and conduct also may be relevant. *Light v. Social*
17 *Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an
18 allegedly debilitating medical problem may be a valid consideration by the ALJ in determining
19 whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v.*
20 *Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her
21 own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which
22 cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir.
23 1990). "Without affirmative evidence showing that the claimant is malingering, the
24 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
25 *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
26 ////

The ALJ found that plaintiff statements regarding his symptoms and resulting limitations were generally credible, but not to the extent alleged. AR at 25. In finding that plaintiff was not completely credible, the ALJ found it significant that plaintiff alleged he was disabled as a result of an injury sustained in November 2004, but plaintiff did not stop working until September 15, 2005.

Plaintiff claims that this is not a legitimate basis for discrediting his statements because the evidence shows that he only continued to work on a part time basis and that he ultimately ceased working due to back pain. Dckt. No. 20 at 15-18. First, a plaintiff's ability to work on a part-time basis is evidence an ALJ may consider in evaluating credibility. *See Bray v. Astrue*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (holding that plaintiff's ability to work as a part-time care giver supported an adverse credibility finding). Second, while plaintiff testified at the hearing that he ultimately ceased working because his limitations prevented him from doing clerical work, these statements are contradicted by other evidence in the record. In finding that plaintiff's credibility was diminished because he continued to work after his injury, the ALJ cited to a Disability Report Form SSA-3368. AR at 25. The form the ALJ relied upon states that plaintiff stopped working because he had conflicts with other employees and computer comprehension problems. *Id*. at 184.

Although plaintiff disagrees with the ALJ's credibility determination, it was up to the ALJ to weigh the evidence. Because the ALJ provided a clear and convincing reason that is supported by evidence in the record, the court will not disturb the ALJ's findings. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Accordingly, the ALJ did not err in discrediting plaintiff's testimony because he continued to work after the alleged debilitating injury.

The ALJ also discredited plaintiff's testimony because there were inconsistencies in plaintiff's statements. Specifically, the ALJ found plaintiff's testimony that his two sons lived

with him and that he is the sole caretaker of his children to be inconsistent with his allegations that he is unable to perform any of his activities of daily living. AR at 26. At the hearing, plaintiff testified that his two children, who were 9 and 13 years old at the time of the hearing, lived with him. *Id*. at 41-42, 56. He further testified that he has had custody of his children for the last 9 to 10 years. *Id*. at 56. Plaintiff stated that his girlfriend has helped out around house for the last year and half, and before that he would call his brother or mother if he needed assistance. *Id*. at 54, 56. He also stated that his oldest son helps out with the yard work and other physical work. *Id*. at 54. Plaintiff argues that the ALJ failed to consider his statements that he has received assistance from his girlfriend, mother, and brother to compensate for his physical limitations. Dckt. No. 20 at 19.

The fact that plaintiff received assistance from his girlfriend and family does not render the ALJ's finding invalid. Plaintiff alleges that he was disabled beginning in September 2005, which was more than four years before the hearing. At that time, plaintiff's children would have been 5 and 9 years old. Given how young his children were at the alleged disability onset date, that they lived solely with plaintiff, and that plaintiff alleged that he could perform little to no activities of daily living, the court does not find the ALJ's inference impermissible, even when taking into consideration plaintiff's testimony that he could call his brother and mother for assistance. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the [ALJ] is entitled to draw inferences logically flowing from the evidence."). The inability to perform activities of daily living is inconsistent with raising two young children, even if others provide some assistance. Accordingly, the ALJ did not err in discrediting plaintiff's testimony.[7]

---

[7] The ALJ also found that plaintiff's statements were not entirely credible because they were not supported by objective medical evidence and because plaintiff continued to smoke cigarettes. AR at 26. Because the reasons discussed above provide a legally sufficient reason for discrediting plaintiff's testimony, the court does not address the legal sufficiency of these additional reasons.

D. <u>The ALJ Did Not Err in Failing to Credit the VE Testimony</u>

Plaintiff argues that the ALJ committed prejudicial error by failing to credit the VE's testimony in response to a hypothetical that accurately included plaintiff's functional limitations. This argument is based on plaintiff's contention that the ALJ's RFC assessment did not include the opinions of plaintiff's treating physicians and plaintiff's testimony regarding his symptoms and limitations. As explained above, the ALJ did not error in rejecting this evidence. Accordingly, the ALJ was not required to credit the VE's response to a hypothetical that included such limitations.

IV. <u>CONCLUSION</u>

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 28, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE